FILED

08 APR 23 AM 9: 08

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: ____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYNANTE PRE,<br><br>                                    Petitioner,<br><br>          v.<br><br>VICTOR M. ALMAGER, Warden,<br><br>                                    Respondent. | CASE NO. 07-CV-890 W (WMc)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254** |

Petitioner Reynante Pre ("Petitioner"), a state prisoner proceeding *pro se*, has filed a federal Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"). The Court decides the matter on the papers submitted and without oral argument. See Civil Local Rule 7.1(d.1). For the reasons outlined below, the Court **DENIES** Petitioner's request for habeas corpus relief.

///
///
///
///
///
///

- 1 -

07cv890w

1    I.    BACKGROUND

2           The facts are undisputed and were set forth by the Fourth District Court of

3    Appeal, Division One, in a published opinion stating the following:

4

5           On March 26, 1999, G. Rose, returned to her apartment in a gated
     community after grocery shopping.  As she exited the elevator on her
6    floor, she saw Pre, whom she did not recognize, standing by the elevator.
     She smiled at him and walked to her nearby apartment, unlocked the
7    door, took two steps inside, set down her groceries on the kitchen counter,
     and waited for the door to "click," indicating it was closed.
8
            When she did not hear the click, she turned around and saw Pre
9    opening the door.  She went to the door to block him from opening it
     further.  In broken English, Pre asked, "How you get out garage?"  While
10   keeping the door open only about [twelve] inches, Rose answered, "You
     drive out the garage."  Pre repeated his question or asked how to get out
11   the gate.  Rose told him to go to the rental office and began to close the
     door but Pre had his foot inside the door and resisted her closing the door.
12   He forced his way into her apartment.  She stumbled backward, losing her
     balance, as he entered.
13
            As soon as she regained her balance, Rose kicked Pre in the groin,
14   which slowed him momentarily.  Rose testified there was "a major scuffle"
     while they were both standing.  He began to choke her and she responded
15   by trying to choke Pre or gouge his eyes.  She then tripped or fell to the
     floor, landing on her back with Pre over her.  He continued to choke her
16   with one hand while he reached behind his back and pulled out a weapon
     with his other hand.  The weapon was later determined to be a car club (a
17   steering wheel locking device).

18          Pre would have hit Rose's left temple with the car club if she had
     not put up her left hand to deflect the blow and to try to grab it.  Pre
19   wrested the car club from Rose by pulling it in a backward motion; as he
     did so, the car club came apart and part of it flew off.
20
            Pre grabbed Rose's hands and dragged her down the hall so they
21   could not be seen through a nearby window.  Rose was kicking and
     struggling.  Pre continued to choke Rose until she lost consciousness.
22   When Rose regained consciousness, Pre had her shoulders and head
     cradled in his lap area, her head elevated and he was biting her right ear.
23   Rose began struggling again but Pre applied pressure to her throat until she
     passed out again.  Rose was afraid Pre was killing her, believing, "Why
24   would anybody choke somebody out twice if it were not to kill someone?"

25          When Rose regained consciousness, Pre had left the apartment and
     she crawled to the phone and called 911.  She later discovered her purse
26   was missing.

27          As a result of Pre's attack, Rose testified she suffered an injury to
     her right temple, a fracture of her cheek which caused dental problems, a
28   bite mark on her right hand, fractured ribs on her left side, an injury to an
     internal organ, a fracture of her left little finger that was later amputated,

                                        - 2 -                          07cv890w

1  and a bite to her right ear, which required over 100 stitches. The
   photographic exhibits of Rose's injuries additionally show a serious of five
2  round bruises between her breasts, bruising on her back and what appears
   to be a bite mark on her back.
3
       On April 1, 1999, Pre fled to the Philippines (the country of his
4  birth and where he had lived before coming to the United States in 1994)
   because he was afraid he might be prosecuted for the attack. The next
5  day, police received an anonymous tip that led to their discovery of
   evidence implicating Pre as Rose's assailant.
6
       Several years after the attack, the police arranged for Pre's
7  extradition to San Diego for prosecution; he arrived late in the evining on
   January 18, 2002. At that time, the police conducted a videotaped
8  interview with him. At the outset of the interview, the officers advised
   Pre of his *Miranda* rights; although Pre initially told the officers that he did
9  not understand their advisements that his statements could be used
   against him and that he was entitled to the presence of an attorney, upon
10 further explanation, Pre indicated that he understood those rights and was
   nonetheless willing to talk to the officers about the incident. Thereafter,
11 he told the officers that he had taken drugs on the date of the attack and
   did not remember much of what happened, although he recalled going to
12 the apartment, hurting the victim by hitting her with a bar-type
   instrument, choking her until she fell to the floor, getting kicked by her
13 and taking her purse.

14 (Lodgment 5.)  On July 22, 2002, a jury convicted Petitioner in San Diego County

15 Superior Court of attempted voluntary manslaughter, mayhem, torture, robbery, and

16 burglary.  (Lodgment 1.)

17     On August 30, 2002, Petitioner was sentenced to a life term plus thirteen years

18 and four months in state prison.  (Id. at 173–74, 200.)  Thereafter, Petitioner appealed

19 his conviction to the Fourth District Court of Appeal, Division One, where the

20 judgment was affirmed.  (Lodgment 3, 4, 5.) Petitioner then filed a petition for review

21 in the California Supreme Court.  (Lodgment 7.)  On June 30, 2004, the California

22 Supreme Court denied Petitioner's petition for review.  (Id.)  On September 28, 2004

23 Petitioner's conviction became final when the 90-day period in which Petitioner could

24 have sought certiorari in the United States Supreme Court expired.  See Bowden v.

25 Roe, 188 F.3d 1157, 1158–59 (9th Cir. 1999).

26 ///

27

28

- 3 -                                                    07cv890w

1    On September 17, 2005,[1] 354 days after his conviction became final, Petitioner

2 filed a state habeas petition in the San Diego County Superior Court, claiming

3 ineffective assistance of trial counsel. (Lodgment 8.) The court denied the petition for

4 failure to state a prima facie case for relief. (Lodgment 9, Exhibit A.) On March 16,

5 2006, Petitioner filed a habeas corpus petition in the California Court of Appeal alleging

6 ineffective assistance of both trial and appellate counsel, and abuse of discretion by the

7 Superior Court by denying Petitioner's petition. (Lodgment 9.) Again, the petition was

8 denied. (Id.) On October 10, 2006, Petitioner filed a habeas corpus petition in the

9 California Supreme Court with the same allegations. (Lodgment 11.) On April 18,

10 2007, the California Supreme Court denied his petition, and Petitioner's state habeas

11 rights were thus exhausted. (Lodgment 12.)

12    On May 16, 2007, Petitioner commenced these federal habeas proceedings. On

13 November 29, 2007, the Court declined to adopt the magistrate judge's report and

14 recommendation and determined that Petitioner's petition was timely filed. (Doc. No.

15 11.) On February 11, 2008, Respondent filed his response, and on April 2, 2008,

16 Petitioner filed a traverse. (Doc. Nos. 14, 17.)

17

18 II.    LEGAL STANDARD

19    A federal court may grant a habeas petition if it shows the applicant is in custody

20 "in violation of the Constitution or other laws or treaties of the United States." 28

21 U.S.C. § 2254(a). State interpretation of state laws and rules cannot serve as the basis

22 for a federal habeas petition, as no federal or constitutional question would be

23 implicated. Estelle v. McGuire, 502 U.S. 62, 68 (1991). Habeas petitions are governed

24 by the provisions of the 1996 Antiterrorism and Effective Death Penalty Act

25

26    [1]Because Petitioner signed proof of service by mail on the petition for a writ of habeas
27 corpus on September 17, 2005 (Lodgment 8), he is properly afforded the "mailbox rule." See
Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003) (holding under the 'mailbox rule',
a "pro se prisoner's filing of a state habeas petition is deemed filed at the moment the prison
28 delivers it to prison authorities for forwarding to the clerk of the court."). On September 22,
2005, the petition was filed in San Diego Superior Court. (Lodgment 8.)

07cv890w

1 ("AEDPA"). Pursuant to AEDPA, a federal court may grant habeas corpus relief from

2 a state court judgment only if the adjudication was (1) contrary to, or involved an

3 unreasonable application of, clearly established federal law, or (2) was based on an

4 unreasonable determination of the facts in light of the evidence presented in the state

5 court proceedings.  28 U.S.C. § 2254(d); Early v. Packer, 537 U.S. 3, 7-8 (2002).

6      A state-court decision is "contrary to clearly established federal law" if it (1)

7 applies a rule that contradicts the governing law set forth in Supreme Court cases, or

8 (2) confronts a set of facts that are materially indistinguishable from a decision of the

9 Supreme Court and nevertheless arrives at the opposite result. Williams v. Taylor, 529

10 U.S. 362, 405 (2000).   A state-court decision is an unreasonable application of the

11 facts "if the state court identifies the correct governing legal principle from [the

12 Supreme Court's] decisions but unreasonably applies that principle to the facts of the

13 prisoner's case. Id. at 413.

14

15 III.   DISCUSSION

16      Petitioner alleges four grounds for habeas corpus relief: (1) his due process rights

17 were violated because there was insufficient evidence to support his torture conviction,

18 (2) he was deprived of effective assistance of trial counsel, (3) he was deprived of

19 effective assistance of appellate counsel, and (4) the superior court deprived him of his

20 right to due process and abused its discretion by summarily denying his habeas corpus

21 petition. (Petition at 6-9(A).) Respondent contends that Petitioner fails to demonstrate

22 that the state court's rejection of his claims were an unreasonable application, or

23 contrary to, controlling United States Supreme Court law. (Response at p. 5.)  For the

24 following reasons, the Court agrees with Respondent.

25 ///

26 ///

27 ///

28 ///

1    **A.    Petitioner Fails to Show That the Evidence Presented at Trial Does**

2    **Not Support his Conviction**

3        The California Court of Appeal for the Fourth District, Division One, affirmed

4    Petitioner's torture conviction based on its conclusion that the record contained

5    substantial evidence to support the conviction. (People v. Pre, No. D040874, slip op.

6    at 21.)  The Court agrees.

7        In his Traverse, Petitioner reiterates the same arguments made to the Court of

8    Appeal and in his instant Petition.  Specifically, Petitioner argues that his actions

9    against the victim do not show that he intended to cause cruel or extreme pain.

10   (*Traverse* at 6.)  Petitioner argues that the struggle that took place at the beginning of

11   the attack proves that Petitioner intended a battery and assault on the victim, but the

12   actions did not rise to the level of torture.  (*Id.* at 5.)  Petitioner also argues that what

13   took place while the victim was unconscious is mere conjecture and cannot be used to

14   support a conviction of torture.  (*Id.* at 5.)  Further, Petitioner dismisses the moment

15   when the victim awoke to find him holding her and biting her ear as insufficient to

16   prove intent to cause cruel or extreme pain.  (*Id.* at 6.)  Overall, Petitioner argues that

17   a reasonable jury would be unable to find the specific intent to cause cruel or extreme

18   pain to support a torture conviction.  (*Id.*)

19       California law defines torture as "every person who, with the intent to cause cruel

20   or extreme pain for the purpose of revenge, extortion, persuasion, or for any sadistic

21   purpose, inflicts bodily injury as defined in Section 12022.7 upon the person of another,

22   is guilty of torture."  Cal. Pen. Code § 206.

23       In a federal habeas claim, the relevant inquiry in evaluating a sufficiency of the

24   evidence claim is whether, "after viewing the evidence in the light most favorable to the

25   prosecution, any rational trier of fact could have found the essential elements of the

26   crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The

27   Ninth Circuit has further recognized that after "AEDPA, we apply the standards of

28   *Jackson* with an additional layer of deference." Juan H. v. Allen, 408 F.3d 1262, 1274

07cv890w

1    (9th Cir. 2005).

2          Under this standard, the Court concludes that the California Court of Appeal's

3    determination was not unreasonable.  Viewed in the light most favorable to the

4    prosecution, the facts are sufficient for a reasonable trier of fact to find Petitioner guilty

5    of torture within the meaning of California Penal Code section 206.  Not only did

6    Petitioner cause such damage to the victim as to require her to receive numerous

7    stitches, but his actions were sufficiently egregious. Petitioner nearly bit the victim's ear

8    off, and the attack lasted long enough for Petitioner to twice choke the victim into

9    unconsciousness.  Under the deferential standard, the California Court of Appeal's

10   determination that the evidence was sufficient to support the conviction was not

11   contrary to U.S. Supreme Court authority, and was not based on an unreasonable

12   determination of the facts.

13         This Court is not called to decide whether it agrees with the state court's decision

14   or whether it would have reached the same conclusion; rather, the Court inquires only

15   whether the state court's decision was objectively unreasonable. Yarborough v. Gentry,

16   540 U.S. 1, 5 (2003). Based on the record, the Court finds Petitioner has failed to show

17   that the state court's determination was objectively unreasonable.  Accordingly, the

18   Court **DENIES** Petitioner's sufficiency of the evidence claim.

19

20         **B.**     **Petitioner Did Not Receive Ineffective Assistance of Trial or Appellate**

21              **Counsel.**

22         Petitioner alleges that both his trial and appellate counsels provided him with

23   ineffective assistance. Specifically, Petitioner argues that his trial counsel's performance

24   was deficient because: (1) she did not conduct a thorough investigation of the facts

25   surrounding the charges and possible defenses; (2) she did not adequately consult

26   petitioner and inform him of important issues and decisions regarding his defense; (3)

27   she failed to object to the trial court's response to jury question number three; and (4)

28   she failed to develop a viable defense strategy. (*Petition* at 7-7D.)  Further, Petitioner

1    argues that appellate counsel did not "raise and/or adequately preserve meritorious

2    issues in appellate proceedings," and his actions fell below the objective standard of

3    reasonableness. (*Petition* at 8.)  The Court disagrees.

4

5          i.       **Two of Petitioner's Ineffective Assistance Claims Were Not**

6                   **Properly Exhausted in State Court.**

7          The Court first addresses the issue of whether two of Petitioner's claims against

8    trial counsel were properly exhausted in state court. (*Response* at 11.)  According to

9    Respondent, Petitioner's claims that trial counsel failed to consult with Petitioner

10   regarding his defense and failed to develop a viable defense strategy were not first raised

11   in the state court. (*Response* at 11.)

12         The Court cannot grant federal habeas corpus relief unless the claims were

13   exhausted in state court.  28 U.S.C. § 2254(b); Rose v. Lundy, 455 U.S. 509, 521

14   (1982).  A state's highest court must have disposed of the claim on its merits in order

15   to exhaust state court remedies for that claim.  Anderson v. Harless, 459 U.S. 4, 6-8

16   (1982).  Petitioner must have presented the same legal claim and factual basis to the

17   state court before he can present it to the federal court.  Gray v. Netherlands, 518 U.S.

18   152, 163 (1996).

19         Here, Respondent argues that Petitioner failed to properly exhaust his claims that

20   trial counsel failed to properly consult Petitioner, and trial counsel did not develop a

21   viable defense. (*Response* at 10-11.)  Petitioner does not adequately address this issue

22   in his Traverse.  Petitioner merely states that the claims were properly exhausted and

23   reverts to his original three arguments, which were properly exhausted in state court.

24   (*Traverse* at 2, 8.)  However, there is no record of Petitioner exhausting these issues at

25   the state level.  Because Petitioner fails to show that he exhausted his second and

26   fourth ineffective assistance issues in state court, the Court agrees that Petitioner failed

27   to properly exhaust his state court remedies with regards to issues two and four.

28   Accordingly, the Court **DENIES** Petitioner's claims on those issues.

1

        ii.      **Petitioner's Remaining Claims Against Trial Counsel are**

2

                **Without Merit.**

3

        Petitioner also claims that trial counsel failed to adequately investigate the facts

4

surrounding the charges and possible defenses, and trial counsel failed to object to the

5

trial court's response to jury question number three. (*Petition* at 7-7(B).) Respondent

6

argues that Petitioner failed to present evidence to support these claims. (*Response* at

7

13.)

8

        Petitioner must identify the specific unreasonable acts or omissions of

9

counsel—he cannot rely solely on conclusory allegations. <u>Strickland</u>, 466 U.S. at 690;

10

<u>Shah v. United States</u>, 878 F.2d 1156, 1161 (9th Cir. 1989). In effect, Petitioner must

11

clearly establish that counsel's performance was so deficient that it fell below an

12

objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687. Because attorney

13

actions are usually based on informed strategic choices, judicial scrutiny of an attorney's

14

performance must be highly deferential. <u>Strickland</u>, 466 U.S. at 689. Therefore, courts

15

will "indulge a strong presumption that counsel's conduct falls within the wide range

16

of reasonable professional assistance." <u>Id.</u>

17

        Petitioner fails to present adequate evidence that his trial counsel's performance

18

fell below an objective standard of reasonableness. Petitioner's claim that his trial

19

counsel failed to adequately conduct a thorough investigation is not supported by

20

evidence; rather, it is a conclusory allegation. Although Petitioner bluntly states that

21

trial counsel failed to interview the victim and was deficient in cross-examining her as

22

a result, (*Petition* at 7), Petitioner fails to show exactly how this action falls outside of

23

the scope of objective reasonableness.

24

        Further, Petitioner argues that trial counsel's deficiency for failing to object to the

25

superior court's response to jury question number three undermines confidence in the

26

outcome. (*Petition* at 7(A).) In its third question, the jury sent a note to the judge

27

asking "[c]an we conclude that the defendant under voluntary intoxication was able to

28

form the specific intent to commit the theft but not able to form the specific intent to

torture?" (Lodgement 5 at 11.) The judge responded by stating: "I cannot answer your

07cv890w

1  question directly for I would be flirting with the facts[,] which I cannot do since that

2  is your function. [¶] You will have to refer to the applicable instruction s and apply

3  common sense." (Id.)  Petitioner again fails to show that trial counsel's lack of

4  objection was outside the objective standard of reasonableness.

5           Petitioner establishes no reason why his attorney's decision not to interview the

6  victim and not to object to jury question number three should be viewed as anything

7  other than a reasonable tactical decision. Strickland, 466 U.S. at 689.  Accordingly,

8  Petitioner has failed to satisfy his burden of proving that his counsel's performance was

9  deficient. Strickland, 466 U.S. at 687.

10          This Court is not called to decide whether it agrees with the state court's decision

11  or whether it would have reached the same conclusion; rather, the Court inquires only

12  whether the state court's decision was objectively unreasonable. Yarborough v. Gentry,

13  540 U.S. 1, 5 (2003).  Based on the record, the Court finds Petitioner has failed to show

14  that the state court's determination was objectively unreasonable.  Accordingly, the

15  Court **DENIES** Petitioner's ineffective assistance of trial counsel claims.

16

17          iii.    **Petitioner Did Not Receive Ineffective Assistance of Appellate**

18                  **Counsel.**

19          Petitioner claims that appellate counsel was ineffective because appellate counsel

20  failed to raise appropriate issues on appeal. Specifically, Petitioner argues that appellate

21  counsel failed to properly evaluate trial counsel's ineffective performance. (*Petition* at

22  8.) However, Petitioner's claim is premised on a valid claim of ineffective assistance of

23  trial counsel.  Because the Court finds that Petitioner's sole basis for ineffective

24  assistance of trial counsel is gone, Petitioner has not stated a valid claim for ineffective

25  assistance of appellate counsel.  Accordingly, Petitioner has failed to satisfy his burden

26  of showing that his appellate counsels' performance was deficient and the Court must

27  **DENY** this claim. Strickland, 466 U.S. at 687.

28  ///

///

**C.    The Superior Court Did Not Deprive Petitioner of His Due Process Rights or Abuse Its Discretion By Summarily Denying Petitioner's Habeas Corpus Petition.**

Petitioner claims that the superior court violated his due process rights and abused its discretion in denying his habeas corpus petition.  (*Petition* at 9-9(A).) Petitioner's claim of a due process violation, however, is premised solely on the denial of his habeas corpus petition.  As mentioned above, the court finds that the superior court's determination to deny Petitioner's habeas corpus claim was not objectively unreasonable.  Accordingly, Petitioner's sole basis for his Due Process claim has been extinguished.

## IV.    CONCLUSION AND ORDER

In light of the foregoing, the Court **DENIES** Petitioner's petition for a writ of habeas corpus in its entirety.  The Clerk of the Court shall close the district court file.

**IT IS SO ORDERED.**

DATE: April 22, 2008

HON. THOMAS J. WHELAN
United States District Court
Southern District of California